UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:   Constance L. Guthier d/b/a<br>         Integrity Auto,<br><br>                                   Debtor. | Case No. 08-33020<br>Chapter 7 |
| Northeast Remarketing Services, Inc.,<br><br>                                   Plaintiff,<br>v.<br>Constance L. Guthier d/b/a<br>Integrity Auto,<br><br>                                   Defendant. | Adv. Proc. No. 09-50008 |

Appearances:

Holmberg, Galbraith, Van Houten & Miller          Lee Matthew Van Houten, Esq.
Attorneys for Plaintiff
200 East Buffalo Street, Suite 502
Ithaca, NY  14850

Edward J. Fintel & Associates                     Edward J. Fintel, Esq.
Attorneys for Defendant
P.O. Box 6451
430 East Genesee Street, Suite 205
Syracuse, NY  13217-6451

Hon. Margaret Cangilos-Ruiz, U.S. Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

In this adversary proceeding, Northeast Remarketing Services, Inc. ("Plaintiff") seeks a determination that two debts arising from the alleged conversion of automobile sale proceeds by Constance L. Guthier d/b/a Integrity Auto ("Defendant" or "Debtor"), one reduced to judgment in the amount of $27,184.65 plus interest and the second involving a 2002 BMW automobile in

1

the amount of $27,669.75 plus interest,[1] are nondischargeable under the provisions of 11 U.S.C. sections 523(a)(2), (a)(4) and (a)(6). Defendant answered the complaint by way of general denial and raised several affirmative defenses. On June 29, 2009, Defendant filed an amended answer, which set forth three breach of contract counterclaims. In its reply, Plaintiff denied the allegations and raised the statute of frauds as an affirmative defense to Defendant's counterclaims.

The court conducted a trial on the complaint and counterclaims on September 3, 2009. Because the court finds that Defendant wrongfully converted proceeds arising from the sales of motor vehicles for her own use and that said conversion constituted a "willful and malicious injury by the debtor to another" and the same facts support a finding of embezzlement, this court finds the debts to be nondischargeable under sections 523(a)(6) and (a)(4). The court further finds Defendant's counterclaims to be without merit. This memorandum-decision incorporates the court's findings of fact and conclusions of law as permitted by Fed. R. Bankr. P. 7052.

## JURISDICTION

The court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a), 157(b)(1), 157(b)(2)(I) and 1334(b).

## BACKGROUND FACTS

Defendant owned and operated a retail business, Integrity Auto, located at 4033 West Road, Cortland, New York, which sold used motor vehicles to the general public. Defendant testified that she first met Douglas Layaw ("Layaw"), Plaintiff's sole shareholder, director and officer, at a car auction in late 1999 or early 2000 and that they developed an ongoing business relationship. Defendant purchased vehicles to sell at her retail location from Layaw, who was working as an independent, wholesale buyer at that time.

---

[1] Hereinafter references to the debts will refer to principal only and omit the reference to accruing interest.

2

In 2003, Debtor initiated discussions with Layaw regarding the potential sale of Defendant's business, which was not profitable. Layaw offered $12,000.00 for the trade name, all inventory, equipment and fixtures and a covenant not to compete. Defendant turned down Layaw's offer and the parties were unable to reach an agreement at that time.

In 2004, Layaw and Defendant resumed their negotiations. Layaw testified that he intended to start a wholesale business, but agreed to invest in the existing retail operations at 4033 West Road because Defendant, a competent saleswoman, requested his assistance and agreed to manage the retail sales.

The eventual sale of Integrity Auto to Plaintiff was not memorialized in writing. Layaw and Defendant negotiated an informal, oral contract over the course of several months in late 2004. The parties stipulated that the oral purchase and employment agreement ("Agreement") contained the following terms:

(1) Debtor would handle Plaintiff's retail auto sales;

(2) Plaintiff would provide the capital to purchase vehicles;

(3) Plaintiff would sell Integrity Auto's remaining inventory and Defendant would receive any profit from those sales;

(4) Plaintiff would purchase Defendant's equipment for $7,500.00; and

(5) Defendant, while employed by Plaintiff, would receive a 50% commission on cars that she sold from Plaintiff's inventory.

Rather than assuming Defendant's commercial lease, Plaintiff entered into a new lease agreement with the property's owner.

Per the Agreement's terms, Plaintiff paid Defendant the $7,500.00. However, the parties' testimony is diametrically opposed as to whether the Agreement also included a buyout term that

3

obligated Plaintiff to pay Defendant an additional $50,000.00 in connection with the transfer ("Buyout Term"). Defendant testified that Plaintiff agreed to the Buyout Term in a conversation during the fall of 2004. In Layaw's testimony, he denied any such agreement.

Defendant further testified that the parties negotiated the Buyout Term in the presence of her then-boyfriend, Reggie Stanley. Defendant did not produce Mr. Stanley as a witness. Layaw testified that the Agreement never included the Buyout Term and that Defendant's testimony as to the Buyout Term was fabricated. Defendant testified that the parties modified the Buyout Term during a second conversation in the fall of 2004. According to Defendant, she agreed to accept $25,000.00 in cash and the vehicle of her choice, a 2002 BMW worth nearly $25,000.00, in lieu of the $50,000.00 payment ("Modified Buyout Term"). Consistent with his repudiation of the original Buyout Term, Layaw denied the existence of the Modified Buyout Term.

Following the sale of Integrity Auto, Plaintiff conducted retail business as Integrity Sales. Defendant admitted that she and Layaw were not partners in Integrity Sales, which his testimony confirmed. Furthermore, Defendant never held a position as officer, director or shareholder of Plaintiff and Layaw never authorized Debtor to access Integrity Sales' bank or credit accounts. Defendant worked primarily in a sales capacity, although she assumed some administrative responsibilities during the initial, transition period. Defendant also facilitated indirect financing for some retail customers, capitalizing on her pre-existing relationships with lenders.

Layaw affirmed that during the transition period he reimbursed Defendant for out-of-pocket business expenses upon being presented with receipts. Defendant testified that Plaintiff owed her for additional expenses incurred and sales commissions allegedly accrued during the transition period. However, Defendant failed at trial to produce receipts for the alleged expenses or properly document the alleged commissions earned. Instead, Debtor offered a compilation of

4

"wash sheets" detailing automobile sales, many of which, as Defendant admitted, designated Mr. Stanley as the salesperson. Nevertheless, Defendant insisted that Plaintiff was obligated to pay her, rather than Mr. Stanley, the commissions due.

Plaintiff hired Linda Rood as an office manager in April 2005, at which time Defendant relinquished her administrative responsibilities. Layaw testified that Ms. Rood detected a number of inconsistencies during her review of Plaintiff's finances. Specifically, Ms. Rood uncovered five transactions in which Defendant retained automobile sale proceeds that belonged to Plaintiff. The five transactions consisted of:

(1) The sale of a 2002 Chevrolet Tahoe on or about March 1, 2005, from which Defendant retained the net proceeds totaling $12,514.75 ("2002 Tahoe");

(2) The sale of a 2003 Chevrolet Silverado on or about March 18, 2005, from which Defendant failed to remit $1,559.25 in New York State sales tax collected ("2003 Silverado");

(3) The sale of a 2002 Chevrolet Silverado on or about February 21, 2005, from which Defendant retained net proceeds in the sum of $14,080.00 ("2002 Silverado");

(4) The sale of a 2003 Jeep Liberty, from which Defendant retained the sum of $19,230.65, and failed to satisfy the trade-in vehicle's lien ("2003 Jeep"); and

(5) The sale of a 2002 BMW on or about March 28, 2005, from which Defendant retained the net proceeds totaling $27,669.75 ("2002 BMW").

All five transactions were the subject of litigation before the Supreme Court of the State of New York, Cortland County. On January 2, 2008, the state court granted Plaintiff partial summary judgment against Debtor with respect to three of the transactions: (1) 2003 Silverado, (2) 2002 Silverado and (3) 2003 Jeep. After crediting Defendant for two payments made to Plaintiff in

5

March 2005, one in the amount of $19,000.00 and the other in the amount of $1,200.00, the state court entered judgment in the amount of $27,184.65. The state court dismissed the first transaction as paid in full and determined that there was an unresolved issue of fact regarding the fifth transaction, the 2002 BMW, requiring further proceedings.

Layaw testified that at no point did he agree to purchase the BMW for Defendant. Layaw testified that he originally purchased the BMW from a third party to wholesale for Walters Chevrolet Sales in Camden, New York. Subsequently, Defendant learned of this deal and expressed interest in the vehicle. She purchased the BMW at auction and placed it on her 90-day floor plan inventory financing with Manheim Financial Services.

Near the end of the financing period, Defendant, unable to pay Manheim, contacted Layaw for assistance. Layaw arranged for Walters Chevrolet to purchase the BMW again. Defendant admitted that she accepted a $25,500.00 payment from Walters Chevrolet, which she used to settle her personal debt with Manheim.

Shortly thereafter, Defendant identified a retail customer interested in purchasing the vehicle. Defendant disclosed this sales opportunity to Layaw. Layaw proceeded to purchase the BMW from Walters Chevrolet and allowed Defendant to complete the sale on behalf of Integrity Sales. The parties stipulated that Defendant sold Plaintiff's BMW to an unrelated purchaser for the sum of $27,669.75. The purchaser issued the check to Plaintiff's retail business, Integrity Sales. Defendant endorsed the check and deposited the check into her separate, Integrity Auto account. Defendant testified that she retained the entire sale proceeds totaling $27,669.75.[2] The title history introduced as Trial Exhibit 2 corroborates Layaw's recitation of events.

---

[2] Defendant accepted two payments from two separate sources in connection with the 2002 BMW. Of these, Plaintiff seeks a determination that this $27,669.75 debt, which represents the second payment Defendant received, is nondischargeable.

6

## DISCUSSION

Plaintiff seeks a declaration that the two debts are nondischargeable under sections 523(a)(2), (a)(4) and (a)(6). Plaintiff bears the burden of establishing, by a preponderance of the evidence, the elements of an exception to discharge pursuant to section 523(a). *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

### *Section 523(a)(6)*

Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). Plaintiff must establish both "willful" and "malicious" conduct since the statutory requirements are set forth in the conjunctive. *In re Krautheimer*, 241 B.R. 330, 340 (Bankr. S.D.N.Y. 1999). "Willful" denotes "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61-2 (1998). "Malicious" means "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." *In re Stelluti*, 94 F.3d 84, 87 (2d Cir. 1996). However, malice may be implied "by the acts and conduct of the debtor in the context of the surrounding circumstances." *Id.* at 88 (*quoting In re Stanley*, 66 F.3d 664, 668 (4th Cir. 1995).

Plaintiff asserts two claims of willful and malicious injury: (1) the conversion of funds resulting in the state court judgment of $27,184.65, and (2) the alleged conversion of the 2002 BMW sale proceeds in the amount of $27,669.75. Conversion refers to "an unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Peters Griffin Woodward, Inc. v. WCSC, Inc.*, 88 A.D.2d 883, 883 (N.Y.App. Div. 1st Dep't 1982). Conversion, if willful and malicious, constitutes an injury to property within the meaning of section 523(a)(6). *Deere & Co. v. Contella (In re Contella)*,

7

166 B.R. 26, 29 (Bankr. W.D.N.Y. 1994) (*citing Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 332 (1934)).

The state court entered judgment in the amount of $27,184.65 with respect to the conversion of sales proceeds arising from the sale of three vehicles: the 2003 Silverado, 2002 Silverado and 2003 Jeep. In doing so, the state court did not need to decide whether Defendant's conduct was "willful and malicious." The issue before this court is whether these instances of conversion rise to the level of willful and malicious within the meaning of section 523(a)(6).[3]

Defendant testified that she knew in each instance that the funds belonged to Plaintiff when she accepted the money as Plaintiff's employee. Nevertheless, she deposited the funds into her Integrity Auto account. As to the 2003 Silverado, Defendant made a conscious decision not to forward the sales tax that she had collected to the New York State Department of Taxation and Finance. She understood her obligation to remit the funds and that by failing to do so, Plaintiff would be forced to pay that amount. She admitted that she kept the net proceeds from the 2002 Silverado and 2003 Jeep. With respect to the 2002 Silverado, Defendant attempted to explain it away by testifying that Layaw knew she kept the sale proceeds and that her doing so was consistent with the indirect financing arrangement in place at that time. She also testified that Layaw knew that she kept the net proceeds of the 2002 Jeep, totaling more than $19,000.00, without paying off the trade-in vehicle's lien. Plaintiff, however, did not produce any additional evidence to support her self-serving testimony, which was contradicted by Layaw's vehement denial. In balance, the court did not find Defendant's testimony to be credible.

---

[3] Defendant asserted collateral estoppel as an affirmative defense. Collateral estoppel prohibits relitigation of "only those questions actually and necessarily decided in a prior suit." *Brown v. Felsen*, 442 U.S. 127, 139 n. 10 (1979). As "willful" and "malicious" are not elements of a cause of action for conversion, and therefore, not previously at issue before the state court, collateral estoppel is inapplicable.

8

Based upon the testimony, the court finds Defendant's actions to be both willful and malicious. The court infers from Defendant's disclosure that she understood that the amounts she misappropriated were owed to Plaintiff, that she had the requisite state of mind to satisfy the willfulness prong. As to the malice prong, it does not require a specific intent to injure. "A specific intent to harm or injure is not required. Malice is implied when anyone of reasonable intelligence knows that the act in question is contrary to commonly accepted duties in the ordinary relationships among people, and injurious to another." *In re Mitchell*, 227 B.R. 45, 51 (Bankr. S.D.N.Y. 1998) (citations omitted) (internal quotation marks omitted). In each case, Defendant admitted that she contravened her duty to remit the funds, which fulfills the maliciousness prong. Consequently, with respect to the state court judgment of $27,184.65, the court finds that the debt represents a willful and malicious injury by Defendant within the meaning of section 523(a)(6).

Defendant admittedly retained two separate payments for the 2002 BMW, with the second of the two payments, the payment from the unrelated retail purchaser, being the subject of this action.[4] Defendant admitted that the purchaser made the check payable to Integrity Sales, the entity that she knew owned the BMW on the date of sale. Nonetheless, she endorsed the check and deposited the funds into her Integrity Auto account. Furthermore, Defendant testified that she concealed her actions and at no point notified Layaw that she kept the proceeds.

The court finds that Defendant converted the BMW sale proceeds. Defendant admitted that she deliberately and intentionally misappropriated funds owed to Plaintiff, and thus, her actions were willful. Defendant admitted that she endorsed and deposited funds owed to her employer into her business account, without authorization or justification. She then concealed her actions until Ms. Rood uncovered the deficiency. This course of conduct satisfies the

---

[4] In total, Defendant retained more than double the vehicle's purchase price in her Integrity Auto account.

9

maliciousness prong. As such, the court finds the debt arising from the conversion of the BMW sale proceeds in the amount of $27,669.75 to be willful and malicious injury to the property of Plaintiff and nondischargeable under section 523(a)(6).

*Section 523(a)(4)*

Under section 523(a)(4), a debt is nondischargeable if based on "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). Plaintiff did not specify which of the grounds under section 523(a)(4) its claim for nondischargeability is based.

The discharge exception for fraud or defalcation requires proof that the debtor acted while in a fiduciary capacity. 11 U.S.C. § 523(a)(4). Federal law determines fiduciary status under this subsection. *In re Moon*, 1997 WL 34625685 *11 (Bankr. E.D.Va. 1997) (*citing Moore v. U.S.*, 160 U.S. 268, 269) (1895)). To satisfy the fiduciary capacity requirement, the plaintiff must prove that: (1) a technical or express trust was established; (2) the trust relationship pre-existed the debt's creation; and (3) the debt was generated within the scope of the fiduciary relationship. *In re Hyman*, 320 B.R. 493, 509 (Bankr. S.D.N.Y. 2005). Plaintiff never introduced testimony or other evidence to establish that the requisite fiduciary relationship existed as between Defendant and Plaintiff. Therefore, Plaintiff cannot maintain a claim for fraud or defalcation while acting in a fiduciary capacity pursuant to section 523(a)(4).

However, a fiduciary relationship is not required for a claim of nondischargeability resulting from larceny or embezzlement. *Zohlman v. Zoldan*, 226 B.R. 767, 773 (S.D.N.Y. 1998). Federal common law definitions of larceny and embezzlement apply under section 523(a)(4). *Barristers Abstract Corp. v. Caulfield (In re Caulfield)*, 192 B.R. 808, 818 (Bankr. E.D.N.Y. 1996).

10

Larceny is "the fraudulent and wrongful taking and carrying away [of] the property of another with intent to convert such property to the taker's use without the consent of the owner." *Id.* The plaintiff must demonstrate that the debtor "wrongfully took property from the rightful owner with fraudulent intent to convert such property to [the debtor's] own use without the owner's consent." *Dynamic Food Serv. Equip., Inc. v. Stern (In re Stern)*, 231 B.R. 25, 26 (Bankr. S.D.N.Y. 1999) (*citing Kay v. Rose (In re Rose)*, 934 F.2d 901, 903 (2d Cir. 1991)). The record lacks evidence of the threshold element of larceny. Defendant lawfully took possession of all funds as Plaintiff's authorized salesperson and, as such, the court finds that Defendant did not commit larceny for purposes of the section 523(a)(4) discharge exception with respect to either debt.

Embezzlement encompasses three elements: (1) the debtor rightfully possessed another's property; (2) the debtor appropriated the property for use other than the use for which the property was entrusted; and (3) the circumstances implied a fraudulent intent. *In re Kressner*, 155 B.R. 68, 74 (Bankr. S.D.N.Y. 1993). A debtor's appropriation of funds does not equate to embezzlement absent the intent to defraud. *Id.*

The court finds that each element of embezzlement has been established on the present record. As previously discussed, Defendant accepted the payments at issue in her capacity as Plaintiff's employee, thus fulfilling the first requirement. Defendant stipulated that she retained funds owed to Plaintiff and the New York State Department of Taxation and Finance. As such, it is apparent that Defendant misappropriated the sale proceeds including the taxes collected. The court finds that the same facts which demonstrate Defendant's "willfulness" and "maliciousness" support an inference that Defendant possessed the requisite fraudulent intent

11

under this subsection. Consequently, the court further finds that both debts are, alternatively, nondischargeable under section 523(a)(4).

### *Section 523(a)(2)(A)*

Section 523(a)(2)(A) excepts from discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by false pretenses, a false representation, or actual fraud."[5] 11 U.S.C. § 523(a)(2)(A). "'To sustain a *prima facie* case under [s]ection 523(a)(2)(A)..., a creditor must establish [that]: (1) the debtor made a false representation; (2) the debtor knew the representation was false at the time it was made; (3) the representation was made with the intent to deceive the creditor; (4) the creditor justifiably relied on the representation; and (5) the creditor was injured by the representation and suffered damages as a result.'" *Eurocrafters, Ltd. v. Videdomine*, 2005 WL 1260390, at *4 (N.D.N.Y. May 18, 2005) (quoting *In re Gonzalez*, 241 B.R. 67, 71-72 (Bankr. S.D.N.Y.1999)), *aff'd*, 183 Fed. Appx. 70 (2d Cir. 2006).

Plaintiff never introduced evidence of a specific representation made by Defendant upon which Plaintiff relied. In the absence of such evidence, the court finds that Plaintiff's claim under section 523(a)(2)(A) must be dismissed.

### *Counterclaims*

Defendant raises three counterclaims related to breach of the Agreement.[6] Defendant seeks damages in the sum of: (1) $50,000.00 for breach of the Modified Buyout Term, (2) $32,068.13 for unpaid commissions and miscellaneous expenses, and (3) $4,150.00 for rental

---

[5] Plaintiff omitted reference to its section 523(a)(2)(A) claim in its post-trial brief, which addressed solely its section 523(a)(6) claim.

[6] Contrary to Plaintiff's assertion, the Statute of Frauds is not a complete defense. Under New York law, the Agreement is enforceable despite the fact that it is an oral contract. NY CLS Gen. Oblig § 5-701(a). *See Stillman v. Kalikow*, 22 A.D.3d 660, 802 N.Y.S.2d 714 (2d Dep't 2005) (holding "[a]s long as agreement may be fairly and reasonably interpreted such that it may be performed within a year, Statute of Frauds will not act as bar however unexpected, unlikely, or even improbable that such performance will occur during that time frame.").

payments, snow removal and maintenance expenses. Since the Agreement, as set forth in the Joint Statement of Facts, does not contain these terms, Defendant bears the burden of establishing each with sufficient definiteness. *Reprosystem, B.V. v. SCM Corp.*, 727 F.2d 257, 261 (2d Cir. 1984), *cert. denied*, 469 U.S. 828 (1984). Also, under New York law, Defendant must prove the parties' mutual assent and intention to be bound. *Id.* The party seeking to enforce an oral agreement "has a particularly heavy burden to establish objective signs of the parties' intent to be bound." *Oscar Prods., Inc. v. Zacharius*, 893 F.Supp. 250, 255 (S.D.N.Y. 1996) (*citing Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985)).

Defendant failed to demonstrate Plaintiff's assent to these terms and intention to be bound. Defendant produced no evidence, aside from her own self-serving testimony, which Plaintiff refuted, that validated these terms. As such, the court finds that Defendant failed to meet her burden of proof and dismisses Defendant's counterclaims as being without merit.

## CONCLUSION

For the foregoing reasons, Plaintiff's complaint is sustained as to the counts asserted under sections 523(a)(6) and (a)(4) and dismissed as to the section 523(a)(2)(A) count. Defendant's counterclaims are dismissed. A separate judgment shall be entered holding the state court judgment in the amount of $27,184.65 and the debt arising from the conversion of the 2002 BMW sale proceeds in the amount of $27,669.75 nondischargeable under sections 523(a)(6) and (a)(4) and dismissing Defendant's counterclaims.

Dated: April 9, 2010  
       Syracuse, New York

Hon. Margaret Cangilos-Ruiz  
United States Bankruptcy Judge

13